PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS PIERCE, | ) | |
| | ) | CASE NO.  4:24-cv-612 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SCHWEBEL BAKING COMPANY, *et al.*, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 41 and 43] |

Pending before the Court is Defendant Schwebel Baking Company's ("SBC") Motion for Summary Judgment.  ECF No. 41.  Also pending before the Court is Defendant Local 377 Chauffeurs, Teamsters, Warehousemen & Helpers Union's (the "Union") Motion for Summary Judgment.  ECF No. 43.  Defendants individually move the Court for judgment as a matter of law against Plaintiff Marcus Pierce on Count I (claiming SBC had just cause to terminate Plaintiff's employment), and Count II (claiming the Union did not breach its duty of fair representation when it determined Plaintiff's grievance lacked merit and declined to advance it to arbitration).  ECF Nos. 41 and 43.  Both motions have been fully briefed.  *See* Pl. Opp. Br., ECF No. 51; Def. Union Reply, ECF No. 52; Def. SBC Reply, ECF No. 53.  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons set forth herein, the Court grants Defendants' motions.

(4:24CV612)

# I.    BACKGROUND[1]

## A.  Plaintiff's Employment With SBC

SBC employed Plaintiff Marcus Pierce as a semi-truck driver beginning on July 11, 2022.
Pl. Dep. Tr., ECF No. 40-1 at PageID #: 539 at 46:5-19.  During his employment, Plaintiff was a
Union member.  ECF No. 40-1 at PageID #: 542, 49:8-10.  The collective bargaining agreement
("CBA") between SBC and the Union indicates that SBC may discipline and/or terminate a
member-employee for just cause.  ECF No. 40-1 at PageID #: 877, Ex. 30.  Plaintiff
acknowledges that when he was initially hired, he received a copy of SBC's Employee
Handbook, which divides work rules into two categories: Group A and Group B.  ECF No. 40-1
at PageID #: 549, 56:6-8.  That handbook states, and Plaintiff acknowledges, that, "[a] violation
of a rule in Group B is considered serious enough so that an employee faces immediate discharge
on the first violation."  ECF No. 40-1 at PageID ##: 549-50, 56:22-57:7; ECF No. 40-1 at
PageID ##: 813-15, Ex. 9.  "Insubordination or refusal to perform tasks assigned by supervisors"
falls under Group B and subjects the offending employee to immediate termination.  ECF No.
40-1 at PageID ##: 549-50, 56:22-57:7; ECF No. 40-1 at PageID ##: 813-15, Ex. 9.

Plaintiff was responsible for delivering bread from SBC's bakery in Youngstown, Ohio
to its distribution centers.  ECF No. 40-1 at PageID #: 539, 46:5-21.  In September 2023,
Plaintiff's assigned delivery routes included Bridgeville, Pennsylvania and McKeesport,
Pennsylvania.  ECF No. 40-1 at PageID #: 540, 47:3-6.  His normal route to Bridgeville was to
take the Ohio turnpike into Pennsylvania, exit on to Route 50 (*i.e.*, Millers Run Road), then turn
left at Hickory Grade Road.  ECF No. 40-1 at PageID #: 556, 63:7-20.  Plaintiff would then turn

---

[1] Because the parties failed to submit stipulated facts, as required, the Court mined
the docket for facts pertinent to the ruling.  *See* ECF No. 56.

2

(4:24CV612)

onto Southpointe Road before entering the Bridgeville distribution center parking lot and pulling

into the loading dock behind the facility.  ECF No. 40-1 at PageID #: 558, 65:18-21.

### A.  Plaintiff's Termination

On September 1, 2023, Plaintiff was scheduled to deliver bread to the Bridgeville

distribution center.  ECF No. 40-1 at PageID #: 552, 59:6-9.  According to Plaintiff's driving

log,[2] he left Youngstown at approximately 6:48 p.m. and arrived in Bridgeville at 8:07 p.m.

ECF No. 40-1 at PageID ##: 55-56, 62:16-63:17; Pl. Driving Log, ECF No. 40-1 at PageID #:

831, Ex. 23.  When he arrived, Plaintiff was unable to enter the distribution center parking lot

using the Southpointe entrance because the road was being repaved.  ECF No. 40-1 at PageID

##: 556-57, 63:21-64:13.  With the assistance of a police officer and a flagger, Plaintiff turned

his truck around and parked along the side of Hickory Grade Road.  ECF No. 40-1 at PageID ##:

560-61, 67:4-68:4; Map of Distribution Center Area, ECF No. 40-1 at PageID #: 820, Ex. 11;

ECF No. 49-14 at PageID #: 1291.

Plaintiff then called his SBC supervisors for instruction.  ECF No. 40-1 at PageID ##:

563-64, 568.  The supervisors provided Plaintiff with two alternative methods of delivery: (1)

use a second entrance near the T2 CrossFit gym; or (2) pull into a nearby parking lot and wait for

the distribution center to send smaller trucks to transfer the cargo.  Behmer dep. Tr., ECF No. 39-

1 at PageID ##: 449-50, 13:2-14:5; Rosales dep. Tr., ECF No. 38-1 at PageID #: 392, 8:4-13.

Plaintiff also called Robert Ford, Sr., a Union Steward, for additional guidance.  ECF No. 40-1 at

---

[2] SBC states that consistent with its obligations under the Federal Motor Carrier
Safety Administration's Hours of Service regulations, SBC tracks the amount of time
drivers are actively driving so as not to exceed the 11-hour driving limit.  *See* 49 C.F.R. §
395.3(a); Pl. Driving Log, ECF No. 40-1 at PageID ##: 828-48, Ex. 23.

(4:24CV612)

PageID #: 564, 71:11-13; 822, Ex. 14.  Plaintiff alleges that during that call, Mr. Ford told him to

drive through the cones and the construction site into the parking lot.  ECF No. 40-1 at PageID

##: 565-66, 72:25-73:9.  Mr. Ford denies telling Plaintiff to drive through the cones.  Ford dep.

Tr., ECF No. 36-1 at PageID #: 346, 32:3-14.

 Plaintiff chose none of SBC's proposed options.  Rather, he claims that: (1) the T2

CrossFit entrance had a sign reading: "No thru-way – No semis allowed"[3] (ECF No. 40-1 at

PageID #: 598, 105:9-13); and (2) the parking lot near the Bridgeville distribution center was full

of construction crew vehicles and equipment.  ECF No. 40-1 at PageID #: 570, 77:1-7.  SBC

Vice President of Sales James Behmer testified:

> So, the solution that we came up with was to – you know, if he
> wasn't comfortable, you know, taking the truck through the back
> way, which apparently he was not, that we would have him go down
> to the shopping area that's at the bottom of the hill, less than half a
> mile away, stop there, and we would get individuals out of the
> shipping department to take some straight trucks down and pull the
> load off of the transport truck by backing it up to each other, you
> know, bumper-to-bumper . . . and roll the product into the straight
> trucks, and then they would take it back to the distribution center.

J. Behmer dep. Tr., ECF No. 39-1 at PageID ##: 449-50, 13:18-14:5.  Plaintiff refused to pull

into the shopping center, claiming that the parking lot was full of cars and he did not think he

could safely park and unload there.  ECF No. 40-1 at PageID #: 570, 77:12-17.

---

 [3] Although Plaintiff submitted as much in his proposed uncontested facts (ECF No. 55 at PageID #: 1391, ⁋ 6), Defendants have not agreed to this fact.  Defs. Proposed Stip. Facts, ECF Nos. 42, 54.  As discussed herein, Plaintiff's claim that there was signage explicitly prohibiting semi-trucks from entering the T2 CrossFit gym parking lot is not supported by evidence in the record.  *See* Parking Lot Sign ECF No. 40-1 at PageID #: 827, Ex. 18.

4

(4:24CV612)

After a police officer ordered Plaintiff to move his truck, he drove back to Hickory Grade Road, turned right on to Route 50, and reentered the turnpike towards Youngstown.  ECF No. 40-1 at PageID #: 574, 81:12-23.  He had been in Bridgeville for approximately 34 minutes.  *See* Pl. Driving Log, ECF No. 40-1 at PageID #: 831, Ex. 23.

When SBC learned Plaintiff was driving back to Youngstown, shift supervisor Jeriel Harris called him and instructed him to find a safe place to park in or near Bridgeville to await further instructions.  *See* Rosales dep. Tr., ECF No. 38-1 at PageID #: 396, 12-7-15; Behmer dep. Tr., ECF No. 39-1 at PageID ##: 449-50, 13:18-14:5; Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1197, 43:15-17.  SBC Director of Logistics and Transportation Abraham "A.J." Rosales also tried contacting Plaintiff to direct him to return to Bridgeville and complete the delivery.  ECF No. 38-1 at PageID #: 397, 13:11-20.  At 9:41 p.m., Mr. Rosales texted Plaintiff:

> Marcus, this is A.J. I've been trying to contact you.  This is a Direct Order to turnaround and deliver the Bridgeville load.  If you refuse and fail to deliver you will be terminated!

ECF No. 40-1 at PageID #: 823, Ex. 15.  Plaintiff did not comply.  He pulled into the Youngstown bakery at approximately 10:07 p.m., turned in his paperwork, and left.  ECF No. 40-1 at PageID ##: 585-86, 92:21-93:1; Pl. Driving Log, ECF No. 40-1 at PageID ##: 831-32, Ex. 23.  That same night, another SBC employee, Robert Ford, Jr., took Plaintiff's semi-truck back to Bridgeville and successfully completed the delivery using the alternative entrance without incident.  Behmer dep. Tr., ECF No. 39-1 at PageID #: 465, 29:1-24.

### B.  Grievance Process

On September 2, 2023, Transportation Manager John Ritzler notified Plaintiff that he was suspended pending an investigation into his refusal to complete his assigned delivery.  ECF No. 40-1 at PageID #: 595, 102:11-15.  On September 13, 2023, Plaintiff requested and received a

5

(4:24CV612)

letter with his hire date and last date worked.  ECF No. 40-1 at PageID #: 783, Ex. 7.  With the

assistance of Local Union President Steve Anzevino, Plaintiff grieved his termination.  Pl.

Grievance Report, ECF No. 40-1 at PageID #: 849, Ex. 24; Anzevino dep. Tr., ECF No. 49-1 at

PageID #: 1163, 9:10-23.  SBC denied the grievance, concluding it was untimely and that SBC

had just cause to terminate Plaintiff's employment.  Grievance Denial, ECF No. 40-1 at PageID

#: 850, Ex. 25.  Mr. Anzevino assisted Plaintiff in appealing the denial, represented him during

the grievance hearing and argued on his behalf.  ECF No. 40-1 at PageID #: 686, 193:5-6.  While

SBC agreed that the grievance was timely, it denied the grievance on its merits, maintaining that

it had just cause to terminate Plaintiff's employment.  Grievance Appeal Decision, ECF No. 40-1

at PageID #: 852, Ex. 27.

Mr. Anzevino conferred with Union legal counsel, relaying "the facts of the case, and

[legal counsel's] determination to me was we were highly, highly unlikely to win this case in

arbitration." ECF No. 49-1 at PageID #: 1160, 6:9-12.  Based on that assessment, Mr. Anzevino

notified Plaintiff that the Union would not advance his grievance to arbitration.  ECF No. 40-1 at

PageID #: 835, Ex. 28.  Plaintiff appealed the decision to the Union's executive board, which

affirmed Mr. Anzevino's decision because Plaintiff failed to present new evidence at his appeal

hearing.  ECF No. 40-1 at PageID #: 854, Ex. 29.

## II.      Standard of Review

Summary judgment is appropriate when the pleadings, the discovery and disclosure

materials on file, and any affidavits show "that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Johnson v.*

*Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or

other similar materials negating a claim on which its opponent bears the burden of proof, so long

6

(4:24CV612)

as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute.  An opposing party may not simply rely on the pleadings.  Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The Court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court directs that for summary judgment to be granted, there can be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  A mere scintilla of evidence supporting the non-moving party's position will not ordinarily be sufficient to avoid summary judgment.  *Id.*  A mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the Court must decide whether the evidence is such that reasonable jurors could find that the non-moving party

(4:24CV612)

is entitled to a verdict.  *Anderson*, 477 U.S. at 248.  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The same standard of review applies to cross-motions for summary judgment.  *United Food & Commercial Workers Union Local No. 17A v. Hudson Ins. Co.*, No. 5:11CV2495, 2012 WL 2343905, at *2 (N.D. Ohio June 20, 2012) (Pearson, J.).

### III.    Discussion

### A.  Legal Standard for a Hybrid § 301 Action

Plaintiff has filed this action under § 301 of the Labor Management Relations Act, alleging that SBC discharged him without just cause (Count I) and that the Union breached its duty of fair representation (Count II).  Compl., ECF No. 1.  An action brought by an employee under § 301 against both an employer and a union is recognized as a "hybrid" action.  *Winston v. Gen. Drivers, Warehousemen & Helpers, Loc. Union No. 89*, 93 F.3d 251, 254 (6th Cir. 1996); *see* Labor Management Relations Act, 1947, 61 Stat. 156 §301, 29 U.S.C. § 185(a).  Hybrid § 301 actions involve two interrelated claims: (1) breach of a collective bargaining agreement by an employer; and (2) breach of the duty of fair representation by a union.  *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)).  Because the two claims are inextricably linked, to "prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 64 (1981)) (brackets in original; internal quotations omitted); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976).  Stated another way, if Plaintiff cannot satisfy both prongs, he cannot prevail against

8

(4:24CV612)

either Defendant.  *Garrish v. Int'l United Auto. Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005) (citing *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998); *Bagsby v. Lewis Bros. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987).

SBC retains the right to discipline and terminate employed union members for just cause under Article 13 of the CBA.  *See* Collective Bargaining Agreement, ECF No. 40-1 at PageID ##: 877, Ex. 30; Pl. dep. Tr., ECF No. 40-1 at PageID #: 550, 57:8-11.  "Insubordination or refusal to perform tasks assigned by supervisors" constitutes just cause under the Employee Handbook.  SCB Employee Handbook, ECF No. 40-1 at PageID ##: 813-15, Ex. 9; Pl. dep. Tr., ECF No. 40-1 at PageID #: 550, 57:8-11.  At issue is whether: (1) SBC had just cause to terminate Plaintiff's employment because he was, in fact, insubordinate on September 1, 2023 by failing to deliver bread to the Bridgeville distribution center; and (2) the Union breached its duty of fair representation when it refused to advance Plaintiff's grievance to arbitration.  As explained below, there is no genuine issue of material fact regarding whether SBC had just cause to terminate Plaintiff's employment, or whether the Union breached its duty of fair representation to Plaintiff.

### B.  Count I – Wrongful Termination

Defendants claim they are entitled to summary judgment because SBC had just cause to terminate Plaintiff's employment for failing to deliver bread to the Bridgeville distribution center on September 1, 2023.  SBC claims Plaintiff was insubordinate when he made no real effort to comply with instructions to either deliver the bread or wait nearby for other trucks to unload his trailer.  Plaintiff counters that he was unable to access the distribution center's normal entrance because of a repaving project and the alternative options provide by SBC were unlawful or unsafe, thereby negating his required compliance.

9

(4:24CV612)

>    *1. Legal Standard*

A plaintiff's subjective belief that an employer's directive is unlawful or unsafe is insufficient to survive summary judgment. *Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 802-03 (W.D. Ky. 2011). Rather, a plaintiff must show "evidence that [the] defendant's actions were, in fact, violations of [state] law[.]" *Id.* In *Vonderhaar v. Waymire*, the plaintiff sued her former employer for constructive discharge, claiming that her colleagues were engaging in fraud and that she was at risk of participating in unlawful conduct if she remained employed. 797 F. App'x 981, 994-95 (6th Cir. 2020). Defendant was entitled to summary judgment because plaintiff had not submitted evidence that her colleagues were violating state law. *Id.* at 995. The Sixth Circuit explained that "without evidence concerning the specific laws at issue, a jury could not find that [plaintiff] risked engaging in *illegal* behavior by continuing to work [for] the [employer]." *Id.* (emphasis in original) (citing *Chavez*, 832 F. Supp. at 802-03).

While *Vonderheer* concerned an at-will employee's wrongful termination claim, it is still instructive. In *Garcia v. NLRB*, a Ninth Circuit case cited by Plaintiff, an employee refused to obey his supervisor's directive to tap his horn when he stopped to make residential deliveries, citing a local ordinance forbidding honking except for safety reasons. 785 F.2d 801, 808 (9th Cir. 1986). The court concluded that employers cannot require their employees to violate state law and that contracts or awards stating otherwise violate public policy. *Id.* at 810 (citing *Banyard v. Nat'l Lab. Rel. Bd.*, 505 F.2d 342, 347 (D.C. Cir. 1974). *Garcia* is distinguished from the instant case because it pointed to a specific state ordinance that the plaintiff was directed to violate. *See id.* at 808 n. 1; *see also Banyard*, 505 F.2d at 343 n. 6 (identifying parties' stipulation that Ohio law prohibits weight exceedances for certain vehicles and that plaintiff refused to pull an overweight load).

10

(4:24CV612)

As set forth below, Plaintiff has failed to submit or identify evidence supporting his claims that it was unlawful or unsafe to comply with SBC's directives. Therefore, he has not met his burden to show that there is genuine issue of material fact as to whether SBC had just cause to terminate his employment.

### 2. *Drive Through the Cones*

Plaintiff alleges that SBC instructed him to drive through construction cones. Pl. dep. Tr., ECF No. 40-1 at PageID #: 576, 83:4-18; Pl. Opp. Br., ECF No. 51 at PageID #: 1352. This is contested by SBC (*see* Rosales dep. Tr., ECF No. 38-1 at PageID #: 424, 40:2-4; Ford dep. Tr., ECF No. 36-1 at PageID #: 346, 32:3-14), and is also contradicted by Plaintiff's deposition testimony. ECF No. 40-1 at PageID #: 596, 103:5-13. Specifically, Plaintiff admitted that only Robert Ford, Sr., who is not an SBC supervisor, told him to drive through the cones and that no other SBC employees or managers gave him that instruction. ECF No. 40-1 at PageID #: 596, 103:5-13. Whether Plaintiff was instructed to drive through construction cones is immaterial, as SBC provided several alternatives to deliver the bread, including a second entrance or parking nearby to wait for smaller trucks. Plaintiff must point to evidence in the record demonstrating some genuine issue of fact exists as to whether these other options were unlawful or unsafe. He has failed to meet that burden.

### 3. *Alternate Entrance Option*

The parties agree that there is an alternate entrance to the Bridgeville distribution center. ECF No. 40-1 at PageID #: 599, 106:21-23. This entrance requires trucks to drive through the adjoining parking lot of a local business, T2 CrossFit gym. ECF No. 40-1 at PageID #: 820, Ex. 11. The parties also agree that there is a sign at the parking lot entrance reading, "Not A Thru-Way." ECF No. 40-1 at PageID ##: 825-27, Ex. 16-18. The parties disagree, however, on three

11

(4:24CV612)

points: (1) whether the sign explicitly prohibited semi-trucks from entering the parking lot; (2) the legal effect and enforceability of the sign; and (3) whether it was safe to use the alternate entrance.

First, Plaintiff's claim that there was signage explicitly prohibiting semi-trucks from entering the T2 CrossFit parking lot is contradicted by the evidence. *See* ECF No. 40-1 at PageID #: 827, Ex. 18. A photograph shows that the sign does not reference semi-trucks and only reads: "No Thru Way – T2 CrossFit Only." ECF No. 40-1 at PageID #: 827, Ex. 18. Plaintiff claims that someone altered the sign after September 1, 2023, and that the "no semis" portion was removed and replaced with "T2 CrossFit Only." ECF No. 40-1 at PageID #: 584, 91:15-24. Plaintiff proffers no evidence supporting this claim. Neither has he produced evidence of any other signs explicitly prohibiting semi-trucks from entering the parking lot or using the alternate entrance.

Next, Plaintiff claims the sign prohibited throughway traffic and that the police would have issued a citation had he used the alternate entrance. ECF No. 40-1 at PageID #: 611, 118:5-9. Plaintiff is required to identify some legal authority or evidence, beyond his subjective belief, demonstrating that using the alternate entrance was violative of a state law, regulation, or ordinance. *See Vonderdeer*, 797 F. App'x at 995. Plaintiff points to no Pennsylvania statute, regulation, or ordinance supporting his claim.[4] Indeed, it is undisputed that another SBC

---

[4] Plaintiff included, but did not reference in his brief or during deposition examination, "Exhibit 13," (Anzevino dep. Tr., ECF No. 49-13 at PageID #: 1290) an official Pennsylvania warning sign description for "No Thru Street" signs. Even if Plaintiff had properly authenticated this exhibit, he failed to demonstrate that the official justification and enforceability provisions of "no thru street" signs apply in this case. It is clear the sign at issue does not comport with the dimensions of an official "no thru street" sign (compare, ECF No. 49-10, with ECF No. 40-13) and Plaintiff has not demonstrated that the sign was issued or enforced by Pennsylvania authorities.

(4:24CV612)

employee, Robert Ford, Jr., used the same entrance without receiving a citation. ECF No. 40-1 at PageID #: 619, 126:13-18; Behmer dep. Tr., ECF No. 39-1 at PageID #: 465, 29:4-24. In addition, Plaintiff admits that there were police officers nearby, but he did not ask for permission to use the alternate entrance. ECF No. 40-1 at PageID ##: 602-03, 109:21-110:7.

Similarly, Plaintiff relies on his subjective belief that entering the T2 CrossFit parking lot would be a trespass. ECF No. 40-1 at PageID #: 608, 115:8-24. Aside from the sign itself— which he admits did not display the message "no trespassing" (ECF No. 40-1 at PageID #: 609, 116:11-13)—Plaintiff offers no evidence that entering the parking lot would constitute as a trespass. ECF No. 40-1 at PageID ##: 608-09, 115:19-116:6. Accordingly, Plaintiff has not met his burden to show a genuine issue of material fact exists as to whether it was unlawful to use the alternate entrance.

Finally, Plaintiff claims that the alternate entrance was unsafe because during his SBC training, he was instructed not to use the alternate entrance due a "dip" in the road, which created a tipping hazard, and the additional risk of hitting overhead wires. ECF No. 40-1 at PageID #: 667-68. 174:4-175:24; Compl., ECF No. 1 at PageID #: 3, ¶ 10. SBC argues that it informed Plaintiff the distribution center would send employees to guide him safely over the dip and through the entrance. Rosales dep. Tr., ECF No. 38-1 at PageID #: 392, 8:4-13. Plaintiff retorts he was never told that someone would help him navigate the back entrance. ECF No. 40-1 at PageID #: 585, 92:7-12. Later that evening, however, Mr. Ford, Jr. safely completed Plaintiff's delivery using the alternate entrance with the assistance from the distribution center's employees. ECF No. 38-1 at PageID #: 394, 10:1-15.

Although Plaintiff has not demonstrated there is a genuine issue of fact as to whether the alternate entrance was lawful and safe, the record indicates that Plaintiff was at least

(4:24CV612)

uncomfortable with the prospect of using that option, either because he was unsure of his own driving abilities or some other subjective safety concern. *See, e.g.,* ECF No. 40-1 at PageID #: 599, 106:7-14. For that reason, SBC provided him with the second option: find a place nearby to park and wait for smaller box trucks to unload his trailer.

### 4. Park and Wait Option

As with the first option, Plaintiff has not identified any evidence that the directive to park and wait was unlawful or unsafe. Because Plaintiff was unwilling to use the alternate entrance, SBC instructed him to find a safe place in Bridgeville to park and wait, suggesting the parking lot across the street or the shopping center at the bottom of the hill. Behmer dep. Tr., ECF No. 39-1 at PageID ##: 449-50, 13:2-14:5; Anzevino dep. Tr., ECF No. 49-1 at PageID ##: 1214-15, 60:25-61:10; Rosales dep. Tr., ECF No. 38-1 at PageID #: 392, 8:5-9. Plaintiff rejected both options, claiming that the parking lot across the street was full of construction crew vehicles (ECF No. 40-1 at PageID #: 570, 77:1-11), and that the shopping complex parking lot was full of restaurant patron vehicles. ECF No. 40-1 at PageID #: 570, 77:12-17. After being told to move by police, Plaintiff claims he looked around for somewhere to park and determined there were no safe options. ECF No. 40-1 at PageID ##: 569-70, 76:24-77:3. He then drove to Route 50, turned right, and entered the turnpike towards Youngstown. ECF No. 40-1 at PageID #: 574, 81:18-23; ECF No. 55 at PageID #: 1391, ¶ 12; ECF No. 54 at PageID #: 1386, ¶ 17.

Defendants point to evidence that there were several other options for Plaintiff to park his truck near the distribution center. SBC Mot. Summ. J., ECF No. 41-1. For instance, the shopping center at the bottom of the hill had another entrance off Route 50. Map of Distribution Center Area, ECF No. 40-1 at PageID #: 820, Ex. 11. There was also a Giant Eagle grocery

(4:24CV612)

store about one mile down Route 50 in the other direction, and to which SBC makes deliveries. Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1197, 43:22-25.

Plaintiff admits that he did not attempt to drive further down Route 50 to locate a safe parking spot in Bridgeville, claiming he did not know whether his semi-truck was permitted on that road.  ECF No. 40-1 at PageID ##: 574-75, 81:24-82:3.  Plaintiff offers no evidence (*e.g.*, signage indicating weight limits or prohibiting semis) that he was prohibited from driving in either direction along Route 50 to find a safe place to park.[5]  Plaintiff's claim is dubious given that his normal route to the distribution center exits the turnpike directly onto Route 50.  ECF No. 40-1 at PageID #: 556, 63:7-13.  Presumably, semi-trucks may lawfully drive on that road for more than a single intersection, otherwise signs would instruct to the contrary.  Plaintiff has presented no such evidence and, accordingly, has not satisfied his burden to show there is a genuine issue of material fact that it was unlawful and/or unsafe to drive further down Route 50 to locate a safe parking spot.

Plaintiff makes similar arguments explaining why he refused to exit the turnpike and either park or return to Bridgeville.  ECF No. 40-1 at PageID ##: 577-78, 84:14-17, 21-85:3.  In particular, Plaintiff argues that he did not know if his truck was permitted on the roads off the turnpike.  ECF No. 40-1 at PageID #: 577, 84:14-20.  Plaintiff offers no evidence indicating that

---

[5] Plaintiff submitted a photograph of a road sign indicating a weight limit.  ECF No. 49-21 at PageID #: 1298.  This exhibit appears to have been used during Plaintiff's unemployment hearings, which were conducted in December 2023.  *See* ECF No. 49-2. Plaintiff explained that the sign is posted along the road going into the neighborhood near the distribution center.  ECF No. 49-2 at PageID #: 1246.  This sign was not posted along Route 50 or any of the turnpike exits, and Plaintiff has not offered any other evidence that driving further down Route 50 or exiting to the turnpike to turn around and return to Bridgeville would have been unlawful or prohibited.

(4:24CV612)

his semi-truck was not permitted to use the turnpike exits or the side streets connected thereto in order to turn around and return to Bridgeville. Instead, he argues that turning around would have been futile because SBC had not provided him with any other safe or lawful alternative options to deliver the bread. ECF No. 40-1 at PageID #: 583, 90:13-24. His futility argument is not well taken. As discussed above, even accounting for his discomfort about using the alternate entrance, Plaintiff has failed to demonstrate that it would have been unlawful or unsafe for him to park in Bridgeville while SBC figured out a solution.

Plaintiff argues that SBC's directive to park in the emergency lane and wait for smaller trucks to arrive to unload the bread on the side of the road was unlawful and unsafe. Pl. Opp. Br., ECF No. 51 at PageID ##: 1357-58; Pl. Proposed Stip. Facts, ECF No. 55 at PageID #: 1391, ¶ 13. SBC contests that it instructed Plaintiff to unload his truck while parked in the emergency lane. *See* Behmer dep. Tr., ECF No. 39-1 at PageID #: 481, 45:19-22. Rather, SBC claims that it instructed Plaintiff to either pull over and wait for further instructions or exit the turnpike, turn around, and return to Bridgeville. Rosales dep. Tr., ECF No. 38-1 at PageID #: 397, 13:11-13; Pl. dep. Tr., ECF No. 40-1 at PageID #: 823, Ex. 15. Mr. Behmer testified that, had Plaintiff not been on the turnpike, he would never have been instructed to pull over to the side of the road in the first instance. ECF No. 39-1 at PageID #: 481, 45:8-18. Mr. Anzevino also testified that "if [Plaintiff would] have . . . pulled off at another exit and found somewhere safe, we may not be sitting here." *See* Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1225, 71:14-16.

Plaintiff does not identify any legal authority supporting his claim that it is unlawful to park on the side of the turnpike absent an emergency or mechanical issue his truck. ECF No. 40-1 at PageID #: 578, 85:10-16. It is immaterial whether it is lawful or unsafe to pull over and park in the emergency lane on the freeway because SBC provided Plaintiff with lawful and safe

(4:24CV612)

options *before* he reentered the turnpike. Behmer dep. Tr., ECF No. 39-1 at PageID ##: 449-50, 13:2-14:5.  *See* Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1202, 48:7-25.

Plaintiff has not demonstrated that it was unlawful or unsafe to: (1) find a safe location to park in Bridgeville; or (2) exit the turnpike and return to Bridgeville.  Mr. Rosales warned Plaintiff that failure to complete the delivery would result in his termination.  ECF No. 40-1 at PageID #: 823, Ex. 15.  Plaintiff made no reasonable effort to locate a safe place in or near Bridgeville to park his truck before unilaterally deciding to return to Youngstown.  Similarly, while on the turnpike, he made no effort to pull over or turn around, nor has he presented evidence that SBC's directives were unlawful or unsafe.  Accordingly, there is no genuine issue of material fact regarding whether SBC had just cause to discharge Plaintiff for insubordination.  SBC had just cause to terminate Plaintiff's employment.

### C.  Count II – Breach of Duty of Fair Representation

Assuming, *arguendo*, that SBC did not have just cause to terminate Plaintiff's employment, Plaintiff can only succeed on his hybrid § 301 claim against both Defendants if he can demonstrate that the Union violated its duty of fair representation.  *Hines*, 424 U.S. at 570-71.

A union's decision to not arbitrate an employee's grievance, standing alone, is insufficient to demonstrate the union breached its duty of fair representation.  *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir. 1983); *Dobrski v. Ford Motor Co.*, 698 F. Supp. 2d 966, 991 (N.D. Ohio 2010) (citing *Vaca v. Sipes*, 386 U.S. 171, 191 (1967)).  The issue is not whether the Union acted incorrectly, but whether it handled Plaintiff's grievance in a manner that "is arbitrary, discriminatory, or in bad faith."  *See Kassab v. Aetna Indus., Inc.*, 54 F. App'x 819, 823 (6th Cir. 2002) (citing *Vaca*, 386 U.S. at 190)  Each of these components requires a separate inquiry and

17

(4:24CV612)

Plaintiff must point to some evidence supporting at least one of them to survive summary judgment. *Merrit v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010).

Plaintiff does not allege the Union acted in a discriminatory manner, nor has he identified evidence demonstrating the Union's decisions were motivated by an invidious animus. *See Dragomire v. Local 112 Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 64 F. Supp. 3d 1033, 1054-55 (N.D. Ohio 2014) (quoting *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1359-60 (10th Cir. 1994)) (a plaintiff's claim that the union's action was discriminatory must be "based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus.").

Rather, Plaintiff argues that the Union's decision to not proceed to arbitration was both arbitrary and in bad faith. To demonstrate the Union acted in bad faith, Plaintiff must show that it acted "with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Merrit*, 613 F.3d at 619 (citing *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cr. 1998)). A union's decision is arbitrary if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be 'wholly irrational.'" *Garrison*, 334 F.3d at 538 (6th Cir. 2003) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Mere negligence, ordinary mistakes, or errors in judgment are insufficient to meet the arbitrary standard. *Id.* (citing *Walk v. P\*I\*E\* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992)). A union's decisions are afforded broad deference under the arbitrary prong and district courts are careful not to substitute their judgments for those of the authorized union representatives. *Merrit*, 613 F.3d at 620 (citing *Ratkosky v. United Transp. Union*, 843 F.2d 869, 876 (6th Cir.

18

(4:24CV612)

1988)); *O'Neill*, 499 U.S. at 78 (a union's determination whether to proceed to arbitration is to be accorded a "wide range of reasonableness.").

According to Plaintiff, the Union reviewed his grievance "without defining the rationale for its decision not to go forward." ECF No. 51 at PageID #: 1360. The record does not support this argument. During the grievance process, Plaintiff was represented by Local Union President Steven Anzevino, who spoke on Plaintiff's behalf and advocated, albeit unsuccessfully, for Plaintiff's reinstatement under a last chance agreement. ECF No. 43-1 at PageID #: 948, ¶ 17.[6] Mr. Anzevino investigated Plaintiff's grievance, visited the distribution center (ECF No. 49-1 at PageID #: 1185, 31:9-13), spoke with SBC personnel about the incident, and reviewed Plaintiff's driving log. ECF No. 49-1 at PageID ##: 1192-93, 38:15-3; Anzevino Aff., ECF No. 43-1 at PageID #: 947, ¶¶ 7-9. Mr. Anzevino assisted Plaintiff in filing a grievance, despite concerns that it was untimely. ECF No. 40-1 at PageID ##: 634-35, 141:24-142:8; Pl. Grievance Report, ECF No. 40-1 at PageID #: 849, Ex. 24; Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1163, 9:10-23. It is undisputed that during the grievance hearing, SBC conceded Plaintiff's grievance was timely. ECF No. 54 at PageID #: 1387, ¶¶ 27, 29; ECF No. 40-1 at PageID #: 686, 193:12-15; Anzevino dep. Tr., ECF No. 49-1 at PageID #: 1179, 25:20-23. Still, SBC denied the grievance on the merits. ECF No. 40-1 at PageID #: 852, Ex. 27. After the denial, Mr. Anzevino informed Plaintiff that the Union determined his grievance lacked merit and would not pursue

---

[6] The Union included Mr. Anzevino's affidavit with its motion for summary judgment, detailing the steps Mr. Anzevino took to investigate Plaintiff's grievance and included statements from other SBC personnel. ECF No. 43. Plaintiff, in his reply, does not contest Mr. Anzevino's attempt to negotiate a last chance agreement for him. *See* ECF No. 51.

(4:24CV612)

arbitration.  ECF No. 40-1 at PageID #: 853, Ex. 28.  During his deposition, Mr. Anzevino

explained his decision:

> In this instance . . . I had contacted one of our attorneys, John Doll,
> I gave him the facts of the case, and his determination to me was we
> were highly, highly unlikely to win this case in arbitration.
>
> So with that information, thus I sent a letter to Mr. Pierce saying that
> we would not be forwarding it, that he had the right to appeal to our
> executive board.
>
> And he did so, he came in, he presented any and all evidence that he
> possibly could have, and explained his side of the story to our
> executive board.  And our executive board then made the
> determination to still not forward it to arbitration[.]

ECF No. 49-1 at PageID #: 1160, 6:7-22; ECF No. 40-1 at PageID #: 854, Ex. 29.

The Union considered Plaintiff's grievance, consulted with an attorney, and made a good-

faith decision to not proceed to arbitration.  ECF No. 49-1 at PageID #: 1160, 6:7-22.  Because

Plaintiff had not produced any additional evidence supporting his grievance, the Union decided

not to pursue arbitration.  ECF No. 40-1 at PageID #: 854, Ex. 29.  Plaintiff has not identified

any evidence that the Union handled his grievance in a perfunctory manner or that its decision to

not arbitrate had no rational explanation.  See Poole, 706 F.2d at 184 (collecting cases) ("It is

true that gross mistake or inaction which has no rational explanation may constitute a breach of

the duty of fair representation.").  In addition, Plaintiff has not demonstrated that the Union

engaged in fraud or deceit while representing him throughout the grievance process.  As

discussed above, the Union investigated Plaintiff's grievance, actively represented his interests,

concluded that his grievance lacked sufficient merit to move forward to arbitration, and informed

Plaintiff of that decision.  Plaintiff offers no evidence demonstrating the Union acted arbitrarily

or in bad faith.

(4:24CV612)

Because there is no genuine issue of material fact as to whether the Union breached its duty of fair representation to Plaintiff—it did not—Defendants are entitled to summary judgment.

**IV.   Conclusion**

For the reasons stated herein, Defendants' Motions for Summary Judgment (ECF Nos. 41 and 43) are granted.  Judgment will be entered in favor of Defendants.  The case is dismissed with prejudice.  Trial is cancelled.


IT IS SO ORDERED.


September 25, 2025                                          /s/ Benita Y. Pearson
Date                                                                  Benita Y. Pearson
                                                                        United States District Judge

21